GULOTTA, Judge.
In this mandamus proceeding, inter-venors (applicants for oyster leases), appeal from the trial court’s judgment permitting plaintiff (the original applicant for an oyster lease in the disputed area), to lease a 209 acre area of water bottoms when he originally sought a 60 acre area in his application. Intervenors further complain of the dismissal of their claims for oyster leases within that 209 acre area.
Plaintiff, on the other hand, claims the trial judge, in a separate judgment, erred in failing to allow him to increase his lease acreage from 209 acres to 641 acres. We amend that part of the judgment by reducing the amount of the water bottom acreage allowed to Mitchell B. Jurisich from 209 acres to 66 acres. We reverse and remand for the limited purpose of determining the amount of acreage intervenors are entitled to pursuant to their respective lease applications.
We affirm the judgment denying plaintiffs request to amend his pleadings to conform to the judgment.
On February 10, 1977, plaintiff filed a lease application with the Department of Wildlife and Fisheries requesting 60 acres “more or less” in an area described as:
“A group of bays and bayous — W. at Empire — Gulf Waterway, N/W of L-23119, S. of App Y-62, E. of Bastían Bay, N. of L-21230 to include small bayou going S. & W. to Shell Island Lake.”
Subsequent to plaintiffs application, in-tervenors applied for oyster leases in the same general area as plaintiff.[1] An Octo *590 ber 15,1980 survey of the area described in the application, made at plaintiffs request, indicated 209 acres. Because the' department refused to issue plaintiff a lease in accordance with the 209 surveyed acres, Mitchell Jurisich filed a Petition Por A Writ of Mandamus to direct the Department of Wildlife and Fisheries (the Department) to issue to him a lease for 209 acres “in accordance with the plot of survey of Hugh B. McCurdy, Jr. dated October 15, 1980, Thereafter, Robert Buras, Rennie Buras and Anthony Keko filed an Intervention asking that “they be permitted to be ome arties” to the suit and “join with defendant in resisting the claims of plaintiff”. Intervenors later amended their petition seeking damages. Plaintiff reconvened asking that the intervenors’ petition be dismissed and that a judgment be granted in his favor for all costs and expenses incurred by him “to respond to and defend the petition for intervention” and for “all damages he has incurred or may incur in the future as a result of the actions of intervenors”.
After a video deposition trial, judgment was rendered in favor of plaintiff and the interventions were dismissed.
Appealing, intervenors contend that:
1) because the granting of the lease was a purely discretionary act on the part of the Department, the trial court erred in issuing a writ of mandamus to the Department;
2) the trial court erred in disregarding a Department administrative regulation permitting a 10% variance in lease acreage;
3) the trial judge erred in allowing 209 acres to be leased by plaintiff when he was only entitled to 60 acres “more or less” as sought in his application;
4) the trial court erred in invalidating their lease requests for water bottoms within the 209 acre area.
Plaintiff, on the other hand, claims that he had complied with the lease requirements, and the only obstacle to his acquiring the 209 acres was the “10% rule”, which he claims should not be given effect since it is an unwritten rule, not in compliance with the Administrative Procedure Act. According to plaintiff, the “10% rule”, which is of “unknown origin”, creates an inequitable situation where there are two or more applicants requesting acreage in the same water bottom area. In this regard, plaintiff maintains that the 10% rule limits the first person who applies for a lease in a designated area to only 10% of the acreage stated in his or her application, but allows the subsequent applications in the same area to take the remainder of the acreage. Moreover, plaintiff argues that in situations where there are two or more applicants for the same water bottoms, LSA-R.S. 56:425 allows the first applicant to have a primary claim to the area. Additionally, Jurisich maintains that because the blank space in the lease application form, used for listing the number of acres requested, is followed by the words “more or less”, the applicant is not limited to the amount of acreage requested in the application form.
Lastly, plaintiff argues that because the Department has allowed applicants in the past to seek increased acreage pending lease approval, the Department acted arbitrarily in denying his request for increased acreage.
The problem in this case is that plaintiff applied for 60 acres “more or less” but a later survey of the general area revealed 209 acres.
At the time plaintiff applied for his lease, LSA-R.S. 56:425 provided in pertinent part that a party desiring to lease a part of the bottom or bed of any of the waters of this State had to present a “written application ... setting forth the name and address of the applicant and a reasonably definite description of the location and amount of land ... desired....” Plaintiff’s “APPLICATION FOR SURVEY AND LEASE” provides a blank space for the number of acres requested followed by a comma and the use of the words “more or less”. The application then sets forth a general description *591 and the general boundaries of the requested water bottoms.[2]
Whether Jurisich was entitled to a lease area of 209 acres or whether the Department properly approved a 66 acre lease area depends on the interpretation of the words “more or less”. While, understandably, we are not favored with an abundance of jurisprudential interpretation of the phrase, the Louisiana Supreme Court in Pierce v. Lefort, 197 La. 1, 200 So. 801 (1941) considers the meaning of these words in the context of a purchase of a tract of land. The court in Pierce stated that the term “more or less” when used in a deed ordinarily means “about”. This phrase, according to the Supreme Court, is synonymous with “a little more than”, “not quite”, “not more than”, or “approximately”. All of these words or phrases are ones of limitation, restriction, safety, or precaution. The use of these terms imply that there is no considerable difference in the measurements or the quantity of the area involved. The Pierce Court stated also that these words have never been used for the purpose of covering discrepancies or “major inaccuracies.” See Harries v. Harang, 23 So.2d 786 (La.App. 1st Cir.1945) also dealing with a sale of land where an “overplus” of 65% did not come within the term “more or less”. In the instant case, 209 acres is in excess of 300% of the 60 acres asked for in the application.
While we are not here concerned with a conveyance of real property, the cited cases offer guidance to the meaning of the words as they appear in a lease application.
Adopting the definition of the phrase as interpreted by the Supreme Court in Pierce and Harries, we are led to conclude that the Department properly awarded to Juri-sich a water bottoms lease in the amount of 66 acres.
Jurisich claims, however, that the 66 acre grant by the Department was based upon a “10% rule” or regulation adopted by the Department allowing the award of approximately 10% more or less of the amount requested. Plaintiff claims that because the Department’s rule was not adopted in compliance with LSA-R.S. 49:954(A) (the Administrative Procedure Act), it is not enforceable. According to plaintiff (at the time the lease application was filed), the Administrative Procedure Act required that before a rule or regulation could be adopted, the agency was required to file a copy of the rule, in writing, with the division of administration. Plaintiff points out that the uncontradicted testimony of Perry E. Schafer, chief of the seafood division of the Department, was that the 10% rule was an unwritten policy for circumstances where there was more than one lease applicant for the same area. Because admittedly the purported rule was not in writing as required, plaintiff asserts that reliance on the rule by the Department is misdirected and in error.
We find merit to the argument that a departmental “rule” or “regulation” was not properly adopted in compliance with the statute, nonetheless we cannot say that the discretion asserted by the Department or that the custom adopted by it in interpreting the definitive phrase “more or less” was arbitrary, capricious, unreasonable, or an abuse of discretion.
Having so concluded, we hold that a 66 acre lease area be awarded to Jurisich by the Department. Because of our conclusion, we do not consider other procedural arguments raised by the defendants. Also because of our holding, we reject plaintiffs request for an increase in acreage.
Accordingly, we affirm that part of the April 1,1986 judgment awarding Mitchell B. Jurisich a lease of water bottoms in accordance with his February 10, 1977 application, but amend the judgment to the extent of allowing only a lease for 66 acres within the described area. We reverse and set aside that part of the judgment which cancels and annuls all other leases issued in the same area and which dismisses inter-venors’ claims. We remand the matter to the trial court for the limited purpose of ascertaining the amount of acreage to which intervenors are entitled pursuant to their respective applications.
*592 Finally, we affirm the trial court’s May 27, 1986 judgment denying plaintiff’s motion to amend his petition to conform to the judgment rendered by the trial court. Costs of the appeal to be paid by plaintiff.
AFFIRMED; AFFIRMED AS AMENDED IN PART; REVERSED IN PART AND REMANDED.
*593 APPENDIX A
[[Image here]]

. Robert Buras filed his application for 50 acres, "more or less” on February 2, 1978. Anthony Keko filed his application for 50 acres "more or less" on February 21, 1978.

. See Appendix A attached.