## ISELIN et al. v. LA COSTE.

### No. 11165.

Circuit Court of Appeals, Fifth Circuit.

Feb. 12, 1945.

Rehearing Denied March 14, 1945.

Fred G. Hudson and Murray Hudson, both of Monroe, La., and L. Bryan Dabney, of Vicksburg, Miss., for appellants.

J. D. Thames, of Vicksburg, Miss., and F. C. Claiborne, of New Roads, La., for appellee.

Before McCORD, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

In the spring of 1943 the Plaintiffs, alleging themselves to be citizens of Indiana, sued the Defendant as a citizen of Louisiana in the Federal Court of the Southern District of Mississippi, seeking a declaration that they were the owners of a "tract of land in Warren County, State of Mississippi, known as 'Diamond Point', together with the accretions thereto," of a value in excess of $3,000. The Plaintiffs then alleged that the lands, six fractional sections, were originally in the Parish of Madison, State of Louisiana, but that a portion thereof became submerged

by the Mississippi River in 1929 and the remaining part became submerged during the period between 1867 and 1882, but that subsequently all of the six sections reappeared in the formation of an island in the Mississippi River which, by accretions, became attached to the shore in Warren County, Mississippi, and is known as "Diamond Point." The District Court held: (1) That the lands claimed by the Plaintiffs were located in Mississippi, (2) that the lands to which the Plaintiffs claimed that the accretions adhered were located in Louisiana, and (3) that the Plaintiffs by a deed to the Mengel Company had parted with whatever title they had, and that the reservation of accretions in the Mengel deed was not sufficient to entitle them to recover the accreted lands in Mississippi. The cumulative result of these conclusions was the dismissal of the case for failure to state a claim upon which relief could be granted. Plaintiffs appealed, and this Court affirmed. Iselin v. La Coste, 5 Cir., 139 F.2d 887; certiorari denied, 321 U.S. 790, 64 S.Ct. 791.

Thereafter Plaintiffs, alleging the same diversity of citizenship, filed the present suit in the District Court of the United States for the Western District of Louisiant against the same Defendant, covering the same lands and seeking the same relief, but alleging that the lands are in Madison Parish, Louisiana, instead of Warren County, Mississippi, and that the changes in boundaries were brought about by avulsion rather than by accretion as asserted in the prior suit; and that the avulsive changes in the river do not contrive a change in title of the owner nor in the boundaries of states, and that even though the lands are attached to the Mississippi shore they are in law still a part of the State of Louisiana. We are, therefore, now confronted with the vagaries of the river as well as the vagaries of counsel for Plaintiffs.

Defendant, in this last case, moved for a summary judgment, asserting that the judgment of the District Court of the Southern District of Mississippi, affirmed by this Court, is res judicata of the case at bar. Seeking obviously to detour around so formidable a legal barricade, the Plaintiffs amended, alleging that it was through error and inadvertence of counsel that the first suit was filed in the Federal Court in Mississippi; that the opinion of the Circuit Court of Appeals affirming the District Court was obviously an erroneous, improper, unfounded, and unlawful conclusion disclosing a complete misunderstanding of the entire situation; that the finding that the Plaintiffs had disposed of their holdings to the Mengel Company was wholly erroneous; and that the Mississippi Federal Court was without jurisdiction to determine the title to lands located in the State of Louisiana.

From the order sustaining the motion for summary judgment on the theory that the former suit was res judicata, estopping the Plaintiffs from maintaining the present action, this appeal was taken.

The Appellants now assert that since the land was in Louisiana the judgment of the Federal Court in Mississippi was rendered in the absence of jurisdiction over the land and is void, adjudicated nothing, estopped no one.

In the original suit, wherein jurisdiction because of diversity of citizenship and requisite amount were appropriately set out, the Plaintiffs alleged, the Defendant admitted, and the District Court and this Court each held, that the lands were located in Warren County, Mississippi. Beyond doubt the allegations of the complaint and the admissions of the answer revealed a controversy within the jurisdiction of the Court which would not be lost unless some material averment as to jurisdiction was later clearly shown to have been false.[1] Nothing like this happened, but on the contrary both parties were in accord in the view that the land was in Mississippi and that the Court had jurisdiction. The jurisdiction revealed by the pleadings was never lost by factual revelations in contrariety to the jurisdictional averments in the complaint.

The jurisdiction to hear a suitor's complaint depends upon what he states in his complaint and not upon whether at the hearing he is able to establish its merit. Douglas v. City of Jeannette, 3 Cir., 130 F.2d 652. Jurisdiction in the Federal Court is determined by the allegations of the bill and not by the way the facts turn out or by a decision on the merits. Mosher v. City of Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148.

In the present case, moreover, the

---

[1] Sec. 80, Title 28, U.S.C.A.; Hill v. Walker, 8 Cir., 167 F. 241.

allegation by the Plaintiffs that the lands were located in Mississippi was not disproved, but, as a matter of fact, was confirmed and established by the admissions of all parties and the judgment of the Court. The Defendant appeared and defended, thereby submitting himself to the jurisdiction of the Court. Jurisdiction appears on the record and the judgment is not void on its face. From time immemorial the courts have held that a judgment, valid on its face, cannot, in the absence of fraud in its procurement, be collaterally attacked as to mere errors or irregularities committed by the court in the exercise of its jurisdiction or in the course of the proceedings even though errors and irregularities may appear on the face of the record. 31 Amer.Jur. 181-183, paragraph 582. Byers v. Surget, 19 How. 303, 60 U.S. 303, 15 L.Ed. 670; Cornett v. Williams, 20 Wall. 226, 87 U.S. 226, 22 L.Ed. 254; Cocke v. Halsey, 16 Pet. 71, 41 U.S. 71, 10 L.Ed. 891; Mitchell v. St. Maxent's Lessee, 4 Wall. 237, 71 U.S. 237, 18 L.Ed. 326.

■ The answer to the question of whether or not the lands are in Mississippi is a part of the ultimate inquiry and bears directly on the merits of the case and presents a mixed, and disputed, question of law and of fact, for if, in fact, the lands in question are accretions to the Mississippi shore they belong to the Defendant, but if they were merely cut off from the Louisiana side by an avulsion, then, in law, they would continue to be a part of Louisiana, to which the Defendant would have no just claim.[2] The fact that the accretions did occur was not in dispute, but only their legal effect. The District Court in Mississippi, as well as this Court, on the facts alleged and admitted, and which involved the merits of the case, sustained, rather than rejected, the Plaintiffs' allegation as to jurisdiction and venue. We have, therefore, a situation where the allegations of the Plaintiffs as to the diversity of citizenship, the amount in controversy, and the venue are recognized and adhered to by the Court in its final decision. Subsequent developments in the case, instead of revealing an absence of such jurisdiction, confirmed it, and established as proper the jurisdiction and venue laid in the complaint. The Plaintiffs, by their allegation that the lands were accretions and that they were in Mississippi, may have led the Mississippi Federal Court into error, but the judgment is not void. The instances must, indeed, be rare where a litigant can succeed in charging to the court errors of his own contriving. The judgment cannot be collaterally attacked. Moreover, on the record as presented to the original trial court it is valid, the binding effect of which could be loosened only by the court that rendered it and then only in a direct proceeding predicated on such an equitable showing as is traditionally required to support a bill in the nature of a bill of review.

■ Not only was the judgment of the Federal Court in Mississippi res judicata on the issues involved for decision but it was res judicata in this collateral action on the question of jurisdiction where the record does not show the absence of jurisdiction.

In McCormick v. Sullivant, 10 Wheat. 192, 199, 6 L.Ed. 300, it was contended that a suit in the Federal District Court of Ohio was coram non judice and the decree void because, contrary to the situation in the instant case, the record did not show the diversity of citizenship necessary to confer jurisdiction. The Court rejected this view, saying:

"If the jurisdiction be not alleged in the proceedings, their [Federal District Courts] judgments and decrees are erroneous, and may, upon a writ of error or appeal, be reversed for that cause. But they are not absolute nullities."

The McCormick case was cited as authority in the case of Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 319, 84 L.Ed. 329, in which latter decision the Court said:

"The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determination of such questions, while open to direct review, may not be assailed collaterally."

In Stoll v. Gottlieb, 305 U.S. 165, 59 S.

---

[2] Iselin v. LaCoste, 5 Cir., 139 F.2d 887.

Ct. 134, 137, 83 L.Ed. 104, the following language is found:

"After a Federal court has decided the question of jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact."

█ While there was no contest over the facts as to the location of the land in Mississippi, there was a contest as to the legal effect of the facts alleged by the Plaintiffs and admitted by the Defendant. The issue of law was contested, and the Plaintiffs, in the present effort to relitigate the case, cannot be heard now to say that they should be permitted to do so because by error and inadvertence of counsel they misstated the facts upon which the venue of the first case was predicated.

█ Finally, jurisdiction in a controversy involving more than $3,000 is conferred upon the federal district court by diversity of citizenship. Jurisdiction is the power to adjudicate and is granted by Congress. Litigants may not confer this power on the court by waiver or consent, but the place where the power to adjudicate is to be exercised is venue, not jurisdiction. The venue has relation to the convenience of the litigants and may be waived or laid by consent of the parties. Neirbo Co. v. The Bethlehem Shipbuilding Corporation, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437.[3]

█ In the first case the Plaintiffs not only did not raise any question as to the venue but had the Court to take the case on their allegations of jurisdiction and venue. They cannot now be heard to make a delayed and different assertion in a second, and collateral, proceeding.

It was argued earnestly that an affirmance would distort the purpose for which courts are established, i. e., to do justice —but it seems that the appropriate answer is that the courts were created to do justice under the law. This was, doubtless, made requisite on the theory that in the course of the years application of the established rules of law will better fulfill that purpose than would the emotional reactions of the individuals who sit in judgment.

That avulsive changes in the vagrant course of the Mississippi have produced confusion in titles and boundaries of lands of a few individuals can in no wise justify the Court in making violent changes in the salutary course of the law of estoppel by conduct and by record.

The judgment below is affirmed.

---

[3] "Section 51 'merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election.' Commercial Ins. Co. v. Stone Co., 278 U.S. 177, 179, 49 S.Ct. 98, 99, 73 L.Ed. 252.

"Being a privilege, it may be lost. It may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct. Commercial Ins. Co. v. Stone Co., supra. Whether such surrender of a personal immunity be conceived negatively as a waiver or positively as a consent to be sued, is merely an expression of literary preference. The essence of the matter is that courts affix to conduct consequences as to place of suit consistent with the policy behind § 51, which is 'to save defendants from inconveniences to which they might be subjected if they could be compelled to answer in any district, or wherever found.' General Investment Co. v. Lake Shore Ry. Co., supra, 260 U.S. at 275, 43 S.Ct. at page 113, 67 L.Ed. 244." Neirbo Co. v. The Bethlehem Shipbuilding Corporation, 308 U.S. 165, 60 S.Ct. 153, 155, 84 A.L.R. 167, 128 A.L.R. 1437.

In Freeman v. Bee Machine Co., 319 U.S. 448, text 453, 63 S.Ct. 1146, 1149, 87 L.Ed. 1509, it is said:

"But venue involves no more and no less than a personal privilege which 'may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct.' Neirbo Co. v. Bethlehem Shipbuilding Corporation, 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167, 128 A.L.R. 1437. On the face of the present record it would seem that any objection to venue has been waived. There is no indication in the record before us that any such objection was 'seasonably asserted.' Commercial [Casualty] Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 179, 49 S.Ct. 98, 73 L.Ed. 252; Interior Construction Co. v. Gibney, 160 U.S. 217, 16 S.Ct. 272, 40 L.Ed. 401. As we have noted, the District Court did not place its ruling on the grounds of venue. Nor is there any indication in the record that petitioner raised the venue point in the District Court."